David Romulus v. CVS Pharmacy. Mr. Boudreaux. Good morning. May it please the Court, my name is James Boudreaux, law firm of Greenberg Traurig, on behalf of the petitioner Appellant CVS Pharmacy, Inc., and if I might, Your Honor, I'd ask that I reserve three minutes of my time for review. You may have it. This is a class action case that was originally filed in state court, and that CVS, there's a tortured procedural history, but the reason we're here today is ultimately CVS removed the case, asserting that the jurisdictional amount exceeded $5 million, and thus there was cap of jurisdiction. And then the plaintiffs followed that with a motion to remand, which ultimately the district court, Judge Zobel, granted. And the basis of the remand was a finding that the notice of removal was untimely. And it was untimely in a specific respect, and she made this clear in response to this court's request for clarification of her order, the original remand order. And that was that it was not filed within 30 days of the initial pleading. But the fact of the matter is that the initial pleading in this case, and I think it's rather undisputed, was not on its face in any way, shape, or form removable. That is, there was nothing that was disclosed in that complaint from which anyone could reasonably calculate the amount. Although you did try. One of the interesting things about this case is how the party's positions sort of get reversed, depending on where we are in this proceeding. Well, and, Your Honor, I think the fact that we tried actually is part of the reason that we're here and part of the confusion that is resulting from a lack of clarity around Kaplan and the removal jurisdiction under Kaplan's protection. Sure. But nonetheless, the pleading on its face was not removable. There was nothing in there in terms of wage rates. There was nothing in terms of anything from which one could extrapolate a damage calculation, at least from the face of the pleading. Moreover, I think it's notable that the face of the pleading didn't even allege citizenship in the parties. It only alleged residency. So there's no doubt that the face of the pleading itself is what is often called in the case law an indeterminate pleading. And because it's an indeterminate pleading from which removability can't be ascertained, the first 30-day time limit, and I call it a time limit, of 1446B doesn't apply. There's no obligation to remove. And every circuit court that has looked at this issue has held exactly that, that the removability in a CAFA diversity case for removability, the amount in controversy has to be clearly and plainly stated in the complaint or in a minimum readily ascertainable. And it wasn't in this case. So that first 30-day time limit never applied. Case goes on. So why does the second one apply? Why does the second one not apply? No. Why is your second attempt timely? Because there's nothing that prohibits it. The removal statute, it's actually a... That's not a good answer. Well, here's the removal statute. If we start with 1441, 1441 says that any case over which federal courts have original jurisdiction may be removed to federal court. 1446A says in order to remove a case to federal court, all a defendant need to do is file a notice of removal, which in court includes consistent with Rule 11, a shortened plain statement of the claim, giving grounds for removal. That's it. Now, those are the authorizations for removal. And I think what Judge Bell did was proceed to go to 1446B and read those as limitations on removal, or actually express authorizations, that is, as the only windows in which a party can remove a case. But that statutory interpretation, frankly, I don't think is consistent. Okay. I may have thoroughly misunderstood this case, but I thought your argument was that under Section 1446B3, this case is removable because the e-mail you received was another pleading from the plaintiff from which it could be ascertained, with a little bit of help, that the case is one which is or has become removable. Let me clarify, Your Honor. The petition for removal did cite to 1446B3. It didn't refer to another paper. It just said that we've learned that the case has become removable. And that's basically the citation to which remove a case after the first 30 days. Whether it's another paper in this case, I submit, is irrelevant. Because if the e-mail was another paper, the notice of removal was filed within 30 days of that date. But if it wasn't another paper, there's no limitation because CAFA doesn't have any limitations on removal in terms of time limits. Well, that's another issue which we may not need to reach in this case. I take it that if we were to find that the e-mail was another paper, we have a simple solution to this problem. Correct? Well, I don't know what the specific problem you're identifying is. But if you find it was another paper, it was clearly timely. That's you got it. Correct. And then it would take us to the second prong of the issue, and that is the fact or the claimed error, the second prong of the claimed error, which is that Judge Zobel never did anything in this case in the second removal vis-a-vis the jurisdictional amount, whether it was satisfied or not. So are you arguing that you have established the jurisdictional amount or that she didn't adequately analyze the question? I think the answer to that is both, that one, she did not find jurisdictional facts as required where there's a jurisdictional dispute as this Court has held several times. So that was not done. And secondly, we also submit that we have established to a reasonable probability or by our preponderance of the evidence that there's no doubt that this case involves more than $5 million. And that meets the other half of jurisdictional requirements. Do you mind if I ask you a question? I'm trying to understand why, if your position is correct, that 1441 is a general grant that does not have time limits. Why even have the time limits, particularly in 1446b-3? If you're allowed to sandbag if it's not based on a paper that came from the other side or from the Court, then why would Congress do that? I think it's more a function of the evolution of the removal statute. In fact, if you look at the evolution of the removal statute and where it started, the Supreme Court and Congress, frankly, over many years have written terms out of the statute and written terms into it, relying, frankly, on the broad legislative intent of what it's designed to do. And that is, one, to protect the defendant's right to be in federal court where there's original jurisdiction, and secondly, to make sure that that right is not lost due to vagaries, pleadings, manipulation, and particularly in CAFA cases. That was why those amendments were made. But if you go back, I mean, look at the 1999 Supreme Court. So if it is obvious from the face of a paper, let's keep things on track. But if it's not obvious, I still don't quite understand why the defendant gets to sit on that information. Well, the defendant gets to sit on it, frankly, because as the case law is have looked at it, the reason is if you start to inquire into the defendant's subjective state of mind, what they knew and when they knew it, you're going to end up in massive, many disputes and trials, frankly. I mean, this case is probably a very good example of it. Well, and I can also see, in addition, you may have to give up a defense just for the sake of removal, of getting it removed. I could see not wanting to put defendants in that position. I suppose that's a policy choice. Right. Yeah. But, you know, going back to the Supreme Court, I mean, you know, the 1446B, the first 30-day term, it says that it's upon receipt of the initial pleading by service or otherwise. But in 1999, the Supreme Court said or otherwise doesn't mean anything. And it's because they're interpreting in the statute, in the historical context, of what it means. In fact, in 1898, the Supreme Court, back then the removal statute said you had to remove by the time you had to answer the complaint. But the Supreme Court said that's not what that really means. You're not forever barred. It means you have to remove within the promptly upon finding out that it's a removable case. But here, there's nothing that prevents a defendant at any time from removing based on its own investigation. You know, the Bright Line Rule actually says something very different, and the majority of circuits have adopted it. You have a few cases that support your broader reading, but not every circuit has dealt with it. And your broader reading, as Judge Howard has pointed out, does present some policy issues about why Congress would then go ahead and set up time limits. It also is at some tension with the statutory language. CVS seems to be coming in wanting to remove the issue from the battlefield when you have a much narrower ground on which you could win. I don't dispute that there is a narrower ground on which we could win, but Judge Lobel, in the district court order, said otherwise. I think that, you know, she said that the email was not another paper, which would then leave us open on that regard. But I agree that there's a far simpler, shorter way to get to the result. Okay. And so how do you distinguish, I mean, how do you, what's your argument that this paper is similar to a pleading, an order? Well, in this case, I look at this email, and if you look at it, it's basically the recitation of what the plaintiff's expert found from this data review. If you look at the actual removal statute, it was amended to say that responses in discovery are other paper. And, frankly, I mean this is. Is that what this is, or is this just something that was offered in the sense of a settlement posturing? Well, it was an informal exchange of information in anticipation of an agreed-upon mediation. There was a structure that we had gone and informally engaged information, frankly something I think we want to talk about. At least one circuit has said even settlement documents count as other papers. Yes, a settlement letter could very well count as other paper if it's formally exchanged. As a practical matter, you could just do a notice to admit and get the same information. Exactly. And, frankly, we did serve discovery trying to call out the jurisdictional amount that we were met with objections, as is typical in cases where one party doesn't want to be in federal court and the other does. Are there any more questions? No. Thank you. Good morning. Tom Ermey here for the Plaintiffs and Appellees. Counsel, I don't mean to throw you off, but Judge Lynch's point I think is an important one, and I'd like to hear whether there's a response to it. If they had served you with a notice to admit with respect to what was in that e-mail, would your response to that have constituted a paper? Your Honor, we couldn't have admitted or denied that because we didn't have all the facts. As we pointed out, CVS provided us with an analysis with facts on which they had done an analysis of the number of breaks that existed when other shift supervisors weren't present with members of the class. Nobody has ever given us any information, any real substantial information, about the second component. In other words, to determine what the damages are, you have to find, as CVS did in its first removal, the average wage for the class members. I'm not sure that I understand. I hope you'll help me with that. The e-mail takes a position that if these are the facts, here's our position, why does that not constitute a paper? Or had there been a request for admission, a response that simply would have said that, on this information, this is our position, why wouldn't that suffice? Because the e-mail did not, the calculation which led to the number in the e-mail, omitted a major factor, which is how many meal breaks were there when shift supervisors were present and where a manager or an assistant manager, there are three levels of management here, shift supervisors who are the class members, store managers, and assistant managers. And the complaint alleges that in a number of cases, shift supervisors were left alone in the store when their meal break came up. And that meant they couldn't leave during their meal break, which is improper under Massachusetts law. And you don't know, you didn't have the information, you say, to be able to calculate that. But wouldn't your settlement position be, since we don't know, we assume it's zero or de minimis? I thought that was the point of the e-mail. Well, the point of the e-mail was, the history of it was that the CVS came to us when we were pressing them for information on the managers and assistant managers. They said, how about trying to settle this case? And we said to them, we don't have enough information to come up with a number. And they said, well, we'll give you some of the information. So they gave us the information that led to the e-mail number. Your expert did a calculation and you provided a number back. Correct. But they knew and we told them that that wasn't the final number. And without getting into any details, when we got into the negotiations with them and successful mediation, we applied an arbitrary discount for the managers and assistant managers in terms of the back and forth. But everybody knew that we didn't know that. Are you suggesting they do know that and that information could be provided to you? Well, I'm suggesting that it's likely that. Or is it one of these things where it's everybody's best guess? Well, we don't know because here's what they've told us. They've told us they don't keep a computerized punch data, such as what they gave us for the supervisors. But they do keep hard copy schedules of the managers and assistant managers. And then later, they produced some sort of electronic output from the system, a very limited amount of it, just relating to the stores in which the class plaintiffs worked, which suggested, yes, they have information. We've asked them for it. They've said, well, it would be a little expensive to come up with it. It's hard to find. The hard copies are in the basements of the stores and they're not on a computer. But, yes, I think they do have information, whether how much it is, how good the information is, whether if we're at trial, the court or the jury would find that information to be helpful. So what about that? If, for whatever reason, at trial, they decided not to come forward with evidence that would reduce that number, you're going to get a judgment over $5 million. Yes, but I think you have to look at it from the current point. From where we stand right now, we're looking at this and we do. They gave us some numbers and we get a starting number, which is the number in the email. But we all know, and there's no reason to believe, that they're not going to try and knock that number down. We know, was it 10% of the shifts that the managers were there or was it 90%? And I can be, I think, I have no doubt that if it was 80% or 90% of the breaks in question when there was a manager there, we're going to hear about it. I mean, they're trying to have it both ways here. They're trying to play hide the ball with this number now. If this court should, by any, I hope it won't, should find that the email number and the email is enough to give that, provide a damage number that's real, that they should be precluded from putting this other evidence in at trial, which they've hidden from us up to now. And this is an easy case from the way we look at it. The statute says that the defendant seeking to remove has to look at the complaint. If the complaint, if the addendum in the complaint has a number in it, then it's over. If it doesn't, this case, this court held in the Amos case, that the defendant has an obligation to take a look at its own files. What does it know? CVS had to, they removed this case under 1446B1. And when they did that, they represented to the court that they could calculate this damage number and that it was in excess of the jurisdictional amount. Why they used a number which bore no resemblance to the allegations in the complaint, I don't know. Except perhaps if they'd used the real number and done the analysis the correct way and taken the actual store manager time out, maybe that would have shown a number that was too high for them. Maybe they were worried about it. I don't know why they did it, but they did it. They told the district court that they could calculate the number, and they did it. And for them now to come in and say we couldn't do it, and therefore we should be excused for not meeting the standard under B1, is pretty disingenuous in our view. But in any event, let's assume for a minute that they didn't have to do B1. Okay, so it was okay for them to try B3 later. But what did they use as the factual predicate for their B3 removal the second time? What they used is numbers they had the first time, as Judge Sobel pointed out. They knew right from the time this complaint was filed what our theory was. It was very clearly stated. Yeah, but the difference is you gave them back a document which contained those numbers. It doesn't matter whether the information started with the defendant or not. That can't possibly be the rule. So Judge Sobel had to have gotten that wrong, because in all of these cases the defendant is going to have relevant information. So the newness criteria doesn't work. Our question is the timing question. And you're asserting that despite the email, that simply wasn't enough to meet the criteria of reasonable probability. Is that it? I'm saying that, and I'm also, but on the timing question, I'm saying they knew what was in that email. They knew from the beginning. But from Congress's point of view, if Congress is concerned with having the plaintiff's statements be the trigger, then it doesn't matter if they knew. Well, it makes sense. Congress is trying to come up with a mechanism that's easy to administer. And so it looks at what the plaintiff's filings are. And then it sets up two triggers. You look at the initial complaint. If it's not sufficient on its face, then you look at later filings. And their assertion is the later filing, whether it adopted their information or not, suddenly put on the table the complaint plus enough information. The question of whether they've met their burden is a separate burden. That's right. But why isn't it timely? Because they knew what was in the email from the time the complaint was filed. They had those figures. They could have figured that out. I'm sure they did figure it out. They told the district court when they filed their first removal position. I think we're just going round and round. I could see an argument that even this later information is only part of the solution to what the actual amount is. We discussed that earlier. Right. You don't know it. You say they're in a better position to know it. They have the information. Correct. Okay. I think this is a case which fits nicely under the B1 standard. I mean, I think you had it right in the Amash case. The cases that are now cited are the more recent cases, which, talking about the bright line, I don't think reflect what Congress intended. They can't. But you can distinguish them, generally speaking. And, you know, the personal injury cases where there's no liquidated amount in the complaint, where there's a pain and suffering component, which is in the plaintiff's head, that's not relevant here. And a case where the factual information, which the defendant, the plaintiff, you know, is in the hands of a third party so that the defendant, when it's sued, doesn't know, doesn't have that key information. Under that situation, a B1 removal would not be appropriate either. But in this case, where they have all the information, and where they, in effect, represented to the court that they could meet the diversity standard when they filed their first petition. I mean, under Rule 11, they had to believe when they came to the court and said, we can tell you that there's enough money to support removal. And now they're saying, I don't know what they're saying, they're saying, well, actually we didn't have that information. Under what circumstances would a plaintiff ever put an ad damnum of $6 million, or any sum above $5 million in these cases? The plaintiffs want to be in state court, right? Correct. And so, in a way, the clear statement rule is about a fictitious situation. Because no plaintiff is ever really going to plead a flat ad damnum. You don't want to be removed. Are there any cases in which a plaintiff would make such a statement in the complaint? That's a good question, and I can't refer you to any, but that's not the argument here. I mean, this is ‑‑ Yeah, I know, but Congress felt that there were too many big cases, staying class action, staying in the state court system. They wanted to give a mechanism for the defendants to move them to federal court for whatever reason. Right. And so, but Congress, sort of in plaintiff's favor, gave plaintiffs a large degree of control over that. Correct. By referring to the plaintiff's pleadings. And they now say they have an additional pleading from the plaintiff that's adequate, and they filed it within 30 days. I know what they're saying, but they're not ‑‑ what they're saying is they have an additional pleading, could use your characterization. Other paper. Other paper from the plaintiffs, which showed the jurisdictional amount. But that's what they knew. They knew that from the beginning of the case. And the ascertained language, the first ascertained language is important here. They first ascertained or should have first ascertained this information right from the beginning. If they looked at our complaint, which I'm sure they did, and if they thought through what our theory of liability was and our theory of damages was, they would have known everything that they knew from that email. So, you know, we couldn't have put an addendum. Whether we would or not, we couldn't have, because we didn't know and we still don't know what the damages are. It makes a big difference how many managers were there. They've got the data on that, and they've never disclosed it. And they are coming in now saying, well, plaintiffs gave us this other paper, which was under questionable circumstances. I mean, they induced us to do that by saying, well, we'll settle it with you, you know, maybe, let's have a mediation. And we said, we don't know any numbers. We don't know what the damages are. They said, well, we'll give you some. And so they gave us a piece of it. And then they said, we had a phone conversation, and they said, yeah, we figured that out a month ago. Our expert came to the same conclusion. And so we said, okay, we won't go to the mediation unless you give it to us in writing. So we said, okay, I mean, is this going to be the end? Is this prejudicial? Maybe we shouldn't have given them that email. But what we gave them in that email was something, number one, that they gave us, and they knew already, and that they had known more than a month, about a month before they gave it to us, gave us the records. And they, I don't think, deny. If they, in fact, have the missing information, and if, in fact, they gave it to you and asked you for an email that confirms their calculations, that with the missing information this case is worth more than $5 million, then you'd concede it was removable? No, you would say it wasn't because they missed the timing. Well, we probably would, but I understand your point. But they didn't give us that information, and that's key here. Okay. Thank you. So would you address the question of the assertion that there is a key bit of missing information, you have it available, and that you're, in essence, with this removal petition trying to gain leverage in a negotiation? I certainly will. First, let's start right at the data point. Managers and assistant managers at the time were all exempt employees. Exempt employees don't clock in, they don't clock out. There is no data set equivalent to time records, as there are for shift supervisors who are non-exempt employees, that says when a store manager is in a store or not in a store. The data that Plans Council refers to are store schedules, and that is if you go into a CVS and you go into the back room, you might see a store schedule pinpointed to the wall. It can be in a computer format, that is there's a template that they can fill out and print it out, and it will be there so everyone knows when they need to be at work. The store manager and ASM, assistant store manager, may very well be identified on that schedule as having work or being assigned to work a particular day. Now, that is the small subset of data that he referred to that we did produce. We did it for the stores in which the named plaintiffs worked, because it is not something that is centrally maintained. It is not something that's subject to any, you know, retention obligations or anything of the sort. It's anecdotal evidence at best. Moreover, it's a schedule. They change constantly. Somebody has an emergency. Are you answering no, we don't have reliable data, and giving me examples of it? We don't have the data which would prove or disprove the plaintiff's claim. And that takes us, you know, as I was sitting listening, the thing that takes me back is the amount and controversy issue here. That the analysis has become so granular that it's missing the point. And that is the plaintiff's claim in this case is that they're entitled to be paid for a half hour each day in which they were one of only two employees in the store. It doesn't matter if it was a manager or non-manager. Or they were the only manager in the store, because CDS policy didn't let them leave. That's strict liability under Massachusetts state law according to the plaintiffs. Entitled in the terrible damages for that time. When you evaluate the claim that way, every shift is an issue. Because you need to determine when those instances occur. And they may not be entitled to liability in every single shift, but they're certainly in controversy. And we have constantly taken numbers, and every time we've presented numbers in the math, we've been told, oh, you didn't take this into account. We take it into account. It's still over $5 million. And the idea that CDS was somehow hiding the ball in this case, when we went into mediation, and, you know, I can't disclose because I signed a confidentiality agreement that we wouldn't disclose the settlement documents in mediation. But my sense of outrage might be different. Thank you.